UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

CIVIL ACTION NO. 7:08-49-KKC

BRENDA JUSTUS *on behalf of* J.C.                                                               PLAINTIFF

v.                                        **OPINION AND ORDER**

MICHAEL ASTRUE                                                                                 DEFENDANT
Commissioner of
Social Security

\* \* \* \* \* \* \*

This matter is before the Court on the parties' Cross Motions for Summary Judgment. For the reasons stated below, the Court hereby orders the Plaintiff's Motion for Summary Judgment **DENIED** and the Defendant's Motion for Summary Judgment **GRANTED**.

**I.      Introduction**

On July 28, 2004, Brenda Justus protectively filed an application for childhood social security income disability benefits on behalf of J.C. (hereinafter "Plaintiff") [Transcript, at 52A-52C]. The application was denied initially and again upon reconsideration. [Transcript, at 13]. At Plaintiff's request, a hearing was held on Jan. 11, 2007, before an administrative law judge (hereinafter "ALJ") [Id.].  Plaintiff and Brenda Justus, his grandmother, were present at the hearing. [Transcript, at 221].  The ALJ advised Plaintiff's grandmother of the right to be represented by counsel during the hearing, but she agreed to proceed with the hearing without representation. [Transcript, at 221-225].  The ALJ denied Plaintiff's application in a decision issued on Feb. 1, 2007. [Transcript, at 10-19].  The Appeals Council denied Plaintiff's request for review, and, therefore, the ALJ's decision stands as the Commissioner's final decision and is now ripe for review under 42 U.S.C. § 1383(c)(3). [Transcript, at 10-19, 3-5].

## II.     Standard of Review

Plaintiff argues that the ALJ did not fully and fairly develop the record according to the heightened duty of care imposed when a claimant is unrepresented by counsel in social security proceedings.  Specifically, Plaintiff argues that the ALJ should have obtained additional medical records regarding Plaintiff's attention deficit/hyperactivity disorder ("ADHD").

The Supreme Court has recognized that because Social Security proceedings are "inquisitorial rather than adversarial," an ALJ has the "duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).  When a claimant is unrepresented by counsel, an ALJ has a "special duty" to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Lashey v. Secretary of Health and Human Services*, 708 F.2d 1048, 1051-1052 (6th Cir. 1984) (quoting *Gold v. Secretary of Health, Education and Welfare*, 483 F.2d 38, 43 (2d Cir. 1972)). This duty may require further investigation by the ALJ, particularly where there are "obvious gaps in the record that create the likelihood that significant evidence exists but has been overlooked." *Fulks v. Astrue*, 2008 WL 1859566, at *4 (S.D. Ohio April 25, 2008).

There is no bright-line test for determining when an ALJ has failed to fully develop the record. *Lashey*, 708 F.2d at 1052.  The determination is made on a case-by-case basis, and a reviewing court will carefully scrutinize the record when the claimant appeared before the ALJ without counsel. *Id.*  Even so, an ALJ's decision will not be reversed simply because the record is not as developed as it might have been had the claimant been represented by counsel. *Rowden v. Chater*, 1996 U.S. App. LEXIS 17295, at *4 (6th Cir. 1996) (unpublished opinion).  "Rather, the key inquiry is whether the ALJ fully and fairly developed the record through a conscientious

2

probing of all relevant facts." *Id.*

Additionally, when reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. Appx. 503, 506 (6th Cir. 2005).

**III. Analysis**

Federal regulations establish a three-step process for determining whether a child is eligible for social security income. The process requires the child to show: (1) that he or she is not working; (2) that he or she has a "severe" impairment or combination of impairments; and (3)

that his or her impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment. *See* 20 C.F.R. § 416.924 (2008). To determine if a child's impairment functionally equals a listed impairment, the regulations call for analysis of the following functional domains: acquiring and using information; attending and completing tasks; interacting and relating with others; moving about and manipulating objects; caring for yourself; and health and physical well-bing. *See* 20 C.F.R. § 416.926a(b)(1) (2008). A child's impairment(s) functionally equals a listed impairment if the child has a "marked" limitation in two domains or an extreme limitation in one domain. *See* 20 C.F.R. § 416.926a(d) (2008).

The ALJ first determined that Plaintiff is not working. [Transcript, at 14]. He then assessed the severity of Plaintiff's alleged impairments. After reviewing the record, including records from Mountain Comprehensive Care Center ("MCCC"), the ALJ found that Plaintiff "has impairments which are considered to be 'severe' under the Social Security Act and Regulations." [Transcript, at 15]. Among these, the ALJ found that Plaintiff has ADHD, combined type and a behavior disorder, not otherwise specified. [Id.]. In the final step of his decision, relying on an evaluation from Phil Pack, M.S. and a report from Plaintiff's Head Start teacher, the ALJ found that the limitations resulting from Plaintiff's impairment do not meet, medically equal, or functionally equal a listed impairment. [Transcript, at 18]. Based on this, the ALJ determined that Plaintiff was not eligible for supplemental security income benefits under the Social Security Act. [Id.]. Though not contested by Plaintiff, the Court agrees with the Commissioner's position that the ALJ's decision is supported by substantial evidence in the administrative record.

Plaintiff argues that the ALJ breached his special duty to develop the record by not

obtaining further records concerning Plaintiff's mental health. The record suggests two possible sources of records that may provide additional insights into Plaintiff's mental health. First, based on records from MCCC, it appears that on May 6, 2005, David Bliss, Psy.D referred Plaintiff to Dr. Matthew for a medical evaluation, presumably regarding the initial diagnosis of Plaintiff's ADHD and behavior disorder. [Transcript, at 194]. It is not clear from the record whether or not this evaluation ever occurred. Although a record from Jane Brake, Ph.D. on August 10, 2005, refers to a medical diagnosis made by someone associated with MCCC, it is not clear that Dr. Brake's record is referring to a diagnosis made by Dr. Matthew and not the initial diagnosis made by David Bliss.[1] [Transcript, at 195]. Additionally, there is some indication that MCCC was not compliant in providing requested records, though it is not clear who requested the records and what they may have contained. [Id.]. The Court recognizes that the absence of a medical evaluation by Dr. Matthew presents a possible gap in the record. However, because the record does not suggest that the evaluation by Dr. Matthews would provide evidence of mental health concerns not otherwise addressed by the ALJ's report, the Court does not believe that this possible gap creates a "likelihood that significant evidence exists but has been overlooked." *Fulks v. Astrue*, 2008 WL 1859566, at *4 (S.D. Ohio April 25, 2008)

The transcript from the hearing on Jan. 11, 2007, suggests a second set of records addressing Plaintiff's mental health that the ALJ could have considered in his assessment. Plaintiff draws this Court's attention to the following dialogue between the ALJ and Plaintiff's Grandmother during the hearing:

---

[1] The Court interprets Dr. Brake's handwritten note as follows: "Given that grandmother has now taken him [Plaintiff] to ccc [MCCC] for tx & they have made a mental diagnosis, please see if we can get a teacher's report Elkorn City Head Start who apparently suggested that he go for tx." [Transcript, at 195].

> Q: Okay. And what is it about him you feel is disabling? What problems does he have?
>
> A: Okay. Sometimes at night, he cries and cries, and sometimes he will lay screaming in the floor, kicking the floor. I have been smacked by him though the face. I have been kicked by him. I first thought it was tantrums–
>
> Q: Hm-hum
>
> A: – but it's not. I've been taking him to see a psychiatrist, and to see another doctor to help him.
>
> Q: Okay. And what has the doctor said is wrong?
>
> A: He has ADHD.
>
> Q: Okay. And there was something in the file about his ears.

[Transcript, at 233]. Plaintiff argues that the ALJ should have obtained the medical records from the doctor mentioned by Plaintiff's grandmother in the hearing. Plaintiff asserts that these records are important for two reasons: first, the last records from MCCC addressing Plaintiff's ADHD indicate that his medication was increased, but there are no subsequent records in the administrative record that may show the effect of the increase; and second, Plaintiff the records would have shed additional light on Plaintiff's mental allegations.

As for Plaintiff's first concern, the Court notes that while there are no additional records from MCCC after the point in time that Plaintiff's medication was increased, the record does contain subsequent evaluations that address Plaintiff's mental functioning. The evaluation provided by Plaintiff's headstart teacher analyzed the domains used to determine if Plaintiff's impairment functionally equals a listed impairment, and that evaluation concluded that Plaintiff's impairment did not equal a listed impairment. [Transcript, at 196-203]. Although an increase in

Plaintiff's medication on July 22, 2005 may have had a negative effect on Plaintiff, it is not reflected in that later record. In fact, the Childhood Disability Evaluation Form completed by Dr. Jane Brake on September 12, 2005, indicates that Plaintiff's ADHD is controlled with medication. [Transcript, at 204-205].

Regarding Plaintiff's second concern, the Court notes that while the records may shed additional light on Plaintiff's mental allegations, there is no indication from the record that they would do so. In fact, Plaintiff's grandmother's testimony indicates that the records in question would not shed any *additional* light on Plaintiff's mental allegations. When the ALJ asked about the doctor's diagnosis, Plaintiff's grandmother's response only addressed Plaintiff's ADHD. The ALJ provided Plaintiff's grandmother with the opportunity to address Plaintiff's mental health concerns at that point, and she did not then identify any other conditions that might be disabling. Moreover, Plaintiff does not now offer any evidence or even argue that he has any other mental conditions that would entitle him to disability benefits. The Court therefore believes that the ALJ properly developed the record regarding Plaintiff's mental health concerns.

The Court is mindful of the difficulties faced by a claimant who proceeds without counsel through the administrative system and recognizes the heightened duties placed on an ALJ in this context. Nevertheless, the Court finds that after a review of the record, the ALJ fulfilled his duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Lashey*, 708 F.2d at 1051-1052. Furthermore, the Court notes that Plaintiff is currently represented by counsel, but has made no showing as to why he is unable to produce the missing records or what they may contain. The Court is reluctant to remand a case when there is no proof that the evidence sought would change the ALJ's decision. *See Brock v. Chater,* 84 F.3d 726,

728-729 (5th Cir 1996) ("Brock points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and would have changed the result. We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that we was prejudiced in any way by the deficiencies he alleges.")

**WHEREFORE**, For the reasons stated above,

1. Plaintiff's Motion for Summary Judgment is DENIED; and

2. Defendant's Motion for Summary Judgment is GRANTED.

Dated this 27th day of February, 2009.

Signed By:

*Karen K. Caldwell*  KKC

United States District Judge